# United States Bankruptcy Court

# District of Massachusetts

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HAVERHILL TECHNOLOGY GROUP, INC. | ) | Case No. 03-43988-JBR |
|     Debtor | ) | |
| REPUBLIC BANK, INC. and TETRA FINANCIAL | ) | |
| GROUP, L.L.C. | ) | |
|       PLAINTIFFS, | ) | |
| v. | ) | A.P. No.  06-4197 |
| DAVID M. NICKLESS, | ) | |
|       DEFENDANT | ) | |
| | ) | |

**MEMORANDUM OF DECISION**

This matter came before the Court for a hearing upon the Motion of Defendant

David M. Nickless for Summary Judgment (Docket #101) on all counts of the Amended

Complaint (Docket #41) and the Motion of Plaintiff Republic Bank, Inc. for Summary

Judgment (Docket #108) on its claim for conversion.

The Amended Complaint, filed by Plaintiffs Republic Bank, Inc. and Tetra

Financial Group, L.L.C. ("Republic" and "Tetra," respectively, or "Plaintiffs"), consists

of six counts (three identical counts alleged separately by each Plaintiff) for recklessness,

gross negligence or negligence; negligent breach of fiduciary duty; and conversion.

**FACTS:**

The Debtor, Haverhill Technology Corp. ("Haverhill" or "Debtor"), filed a

voluntary Chapter 11 petition on July 7, 2003.  On August 5, 2003, the Court appointed

David M. Nickless ("Nickless" or "Trustee") as Chapter 11 Trustee.  Nickless's

appointment resulted from a motion by one of Haverhill's secured creditors alleging that

the Debtor failed to obtain Court approval for the use of cash collateral.  Following his

appointment, Nickless met with William Kovacs ("Kovacs"), the President and CEO of

Haverhill, and decided to retain him to manage the company.  Nickless based his decision

on his opinion that Kovacs "was the only person that had the knowledge…sufficient to be

able to run the business" and that without Kovacs it was his opinion that he would have

been forced to "shut down the business and liquidate[] it."  (Nickless Dep. at 29, 32).

The facts surrounding the transaction underlying the Plaintiffs' claims are largely

undisputed.  The Plaintiffs' and Defendant's understanding of the transaction at the time

it was consummated, however, differed dramatically.  Republic and Tetra negotiated a

transaction with Kovacs in which they believed that Tetra was purchasing $650,000.00

worth of equipment from Haverhill and leasing the equipment to Nanomat, Inc.

("Nanomat").  (Scharman Dep. at 22).  Tetra, a lease provider, arranged the leasing

transaction and then sold the lease to Republic, who relied upon Tetra to consummate the

deal and manage the lease.  (Lindquist Dep. at 8-11; Scharman Dep. at 48-49).

Nickless's view of the transaction was substantially different.  Based on discussions and a

January 6, 2004 email from Kovacs, he understood that Haverhill would act as a broker

in a purchase and sale transaction between a seller of equipment and Nanomat.  (Nickless

Dep. at 68-69).  The Trustee understood that Nanomat's purchase of the equipment was

to be financed by PNC Bank and that the purchase price would be wired to Haverhill.

2

(Nickless Dep. at 57-59)  Haverhill would retain a small commission for its role as broker

and forward the balance of the funds to Nanomat, who would use them to purchase the

equipment.  (*Id.*).

Operating on its view of the transaction, Tetra entered into a lease with Nanomat

of the equipment Tetra understood it was purchasing from Haverhill.  On January 15,

2004, Tetra sold and assigned the lease to Republic for the purchase price of

$731,073.37.  On January 16, Tetra forwarded $650,000 to Haverhill's account.  Also on

January 16, the Trustee authorized the Debtor's bookkeeper to transfer the $650,000

(minus commission) to Nanomat's account.  Nanomat made payments under the lease

with Tetra from the date of the transaction until March of 2005 when it declared

bankruptcy.  (Scharman Dep. at 47).

**DISCUSSION:**

A party is entitled to summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.  The moving party bears the burden of

demonstrating that no triable issue of fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).  If the moving party meets its burden, the burden shifts to the nonmoving

party to introduce evidence of a genuine issue of material fact.  *FDIC v. Municipality of

Ponce*, 904 F.2d 740, 742 (1st Cir. 1990).  The Court is "obliged to view the record in the

light most favorable to the nonmoving party, and to draw all reasonable inferences in the

nonmoving party's favor."  *Leblanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.

1993).

**A.  Immunity**

The Trustee argues that he is entitled to summary judgment on all of the

Plaintiffs' claims because he is protected by quasi-judicial immunity.  Although the

Trustee's claim for quasi-judicial immunity may obviate the need for a determination of

some or all of the Plaintiffs' claims on the merits, there are genuine issues of material fact

with respect to the availability of immunity in the instant case.

"[B]ankruptcy trustees are generally immune from suit for actions arising out of

the operation of the estate."  *Schechter v. Illinois*, 182 B.R. 211, 216 (Bankr. D. Ill.

1995).  This immunity stems from Supreme Court case of *McNulta v. Lochridge*, 141

U.S. 327 (1891).  The Court held that "actions against the receiver are in law actions

against the receivership or the funds in the hands of the receiver, and his contracts,

misfeasances, negligences, and liabilities are official, and not personal, and judgments

against him as receiver are payable only from the funds in his hands."  *McNulta v.*

*Lochridge,* 141 U.S. 327, 332, 12 S.Ct. 11, 13, 35 L.Ed. 796 (1891).  Courts in this circuit

have applied *McNulta* to bankruptcy trustees. *In re Goodrich*, 215 B.R. 638, 640 (Bankr.

D. Mass. 1997) (citing cases).  In order to qualify for such immunity, the Trustee must

have acted within the scope of his duties in administering the estate.  *Schechter*, 182 B.R.

at 211; *see also In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 7 n.4 (1st Cir.

1999).  It is unclear from the record in this case whether a transaction like the one that

occurred was within the scope of the Trustee's duties.  The question of whether the

transaction at hand was within the scope of the Trustee's duties hinges upon whether the

transaction was in the ordinary course of business for Haverhill.

Mr. Nickless testified at his deposition that as best he could recall, Kovacs told

him that Haverhill had acted as a broker "on a number of occasions in the past."

(Nickless Dep. at 68).  The Defendant points to the testimony of Andrew Baxter, a

Haverhill accountant, that Haverhill had engaged in commission work over the course of

the years.  (Baxter Dep. at 56).  Baxter testified, however, that he was only aware of one

such commission arrangement.  (*Id.*).  Ms. Webb, Haverhill's bookkeeper, also testified

that Haverhill had participated in commission transactions before.  (Webb Dep. at 49).

The Plaintiffs, however, point to Nickless's statement at his deposition that his handling

of Republic's funds "…was not what I guess I would characterize as the usual course of

business."  (Nickless Dep. at 68).  Viewing the facts in the light most favorable to the

non-moving party, it cannot be said as a matter of law that the transaction was in the

ordinary course of the Debtor's business.  Therefore, summary judgment is denied with

respect to the issue of immunity and the Court will proceed to examine each count

individually.

**B.  Negligent Breach of Fiduciary Duty (Counts II and V)**

A bankruptcy trustee may be held personally liable for negligent breach of

fiduciary duty.  *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 7 (1st Cir.

1999).  The threshold question in determining whether the Trustee breached a fiduciary

duty to the Plaintiffs is whether or not he owed the Plaintiffs any fiduciary duties.

It is undisputed that neither Republic nor Tetra was a creditor of the Debtor at the

inception of the transaction.  Instead, the Plaintiffs claim that they became creditors as a

result of the transaction, which gave rise to a fiduciary duty on the part on the Trustee.

The Trustee argues that the Plaintiffs are not "parties in interest" and, therefore, are not owed fiduciary duties.  He relies on Section 1109(b)'s definition of party in interest as "the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." The Trustee argues that "he cannot have owed no duty to Republic and Tetra at the time he authorized the transaction in good faith and then turn around and owe them a duty in *connection with the same transaction* once the transaction was completed."  (Memo in Support of Summary Judgment p. 13) (emphasis in original).  He argues that it would be irreconcilable to hold that he owed duties to the estate and creditors with respect to the transaction and also have an equal duty to other third parties with whom he conducted the transactions.

The Trustee points to *In re 2001 Cincinnati, Inc.*, 43 B.R. 6 (Bankr. D. Ohio 1984) and *Tennsco Corp. v. Estey Metal Prods., Inc.,* 200 B.R. 542 (D.N.J. 1996) as support for his proposition that even if a non-party becomes a creditor of the estate as the result of a transaction entered into by the trustee, the trustee cannot be held personally liable because at the time he authorized it, he owed the non-party no duty as a matter of law.  In *Tennsco*, the trustee sold a piece of estate property to the plaintiff and years later hazardous materials were discovered on the property that had to be remediated.  *Tennsco*, 200 B.R. at 544.  The court declined to hold the trustee personally liable for the remediation, because the plaintiff was not a creditor of the estate and, therefore was owed no fiduciary duty.  *Id.* at 545.  In *2001 Cincinatti*, the court refused to hold a trustee personally liable for losing estate property that belonged to the plaintiff because the

6

plaintiff was not a creditor and, therefore, the trustee did not owe him a fiduciary duty.

*2001 Cincinatti*, 43 B.R. at 7.

The Court declines to bifurcate the single transaction between the Trustee and

Tetra into two stages such that a fiduciary duty would have arisen after the first stage and

been breached a result of the second stage.  The transaction was a singular event.  There

is no legal basis for finding that the Trustee owed the Plaintiffs a fiduciary duty.  The

Court finds persuasive the cases cited by the Trustee.  With respect to the negligent

breach of fiduciary duty, the Plaintiffs are neither creditors nor parties in interest and,

therefore, were not owed any fiduciary duties by the Trustee.  Moreover, with respect to

Republic, there is nothing in the record indicating that Kovacs or Haverhill even knew

that it existed.  Due to the absence of any relationship between Republic and the Debtor,

the Court cannot conclude that the Trustee owed Republic any duty at all, much less a

fiduciary duty.   Consequently, summary judgment shall be granted in favor of the

Defendant on Counts II and V.

**C. Negligence (Counts I and IV)**

The Plaintiffs argue that the Defendant was negligent in that he deviated from the

standard of care required by a bankruptcy trustee.  In support of their claim, the Plaintiffs

submitted an expert report of one Irving Picard on which they rely entirely to prove their

claim.

The admissibility of the Plaintiffs' expert testimony is determined under Federal

Rule of Evidence 702 and the *Daubert* standard.  Rule 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise, if (1)

the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 "imposes a gate-keeping role on the trial judge to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *U.S. v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  Particular attention needs to be paid to the relevancy portion of the test in the case at hand.  Expert testimony must be relevant, "not only in the sense that all evidence must be relevant, but in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue."  *Vargas*, 471 F.3d at 261 (quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 80 (1st cir. 1998).  In the case at hand, the proposed expert draws conclusions, i.e., that the Trustee was negligent, without a benchmark against which to compare the Trustee's conduct.  It is the trier of fact's job to determine whether the Trustee's conduct deviated from the reasonable person standard.  Although expert testimony may be relevant in determining the standard of care against which the Trustee's actions should be measured, Mr. Picard does not attempt to articulate a standard of care for a trustee in a situation as in the case at hand.  At most, Mr. Picard's report reads like a memorandum of law.  The Court will not consider the "testimony" of Mr. Picard as expert testimony nor consider his affidavit as a memorandum of law as it was not submitted as such.  Therefore, the Court has not relied upon Mr. Picard's report in determining the parties' motions for summary judgment.

With respect to Republic's negligence claim, Republic has failed to establish or even to plead any relationship with the Debtor or Trustee that would give rise to a duty of

the part of the Trustee.  Because the Trustee owed no duty to Republic, he could not have breached a duty that would give rise to a negligence claim by Republic.  Therefore, summary judgment is granted in favor of the Defendant with respect to Count I of the Plaintiffs' Amended Complaint.

The Court now turns to Tetra's negligence claim.  Negligence claims are not normally amenable to summary judgment as the determination of "whether conduct is negligent is a factual determination in all but the most extreme situations."  *Ortiz v. Rosner*, 817 F. Supp. 348, 250 (S.D.N.Y. 1993).

> "[I]t is especially difficult for a defendant to prevail on a Rule 56 summary judgment motion when the motion is based on the assertion that there is no factual dispute with regard to an issue of *negligence* -inasmuch as those questions ( *i.e.,* of whether the defendant used reasonable care relative to a task in issue) are in general regarded as being within *the special competence of the jury.*

*Willis v. Roche Biomedical Laboratories, Inc.*, 21 F.3d 1368, 1372 (5th Cir.1994) (citing 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2729 (Supp. 1993)). In the case at hand, although much is made of the Trustee's actions, little is offered in the way of what a reasonable person in the Trustee's situation would have done.  The reasonable person against which the Trustee's actions are to be measured requires an intensely factual analysis, taking into account all the facts and circumstances surrounding the transaction at issue and the Defendant's unique role as a bankruptcy trustee of an operating company.  Consequently, summary judgment with respect to the Tetra's negligence claim (Count IV) is denied.

**D.  Conversion (Counts III and VI)**

9

Plaintiff Republic Bank claims argues that the Trustee has admitted to all of the material facts necessary for the Court to enter summary judgment in favor of Republic on the conversion count.

"A plaintiff asserting a conversion claim under Massachusetts law must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused." *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993). An action for conversion also requires proof that the defendant "either did some positive wrongful act with the intention to appropriate the property to himself or deprive the rightful owner of it." *Kelly v. LaForce*, 288 F.3d 1, 12 (1st Cir. 2002).

Republic argues that the Trustee admitted that he exercised control over Haverhill's bank account, had no right to the funds as they were fraudulently obtained, and intended to transfer the funds; therefore, he is liable for conversion as a matter of law.

The Trustee's argument focuses on the fourth element of conversion, which requires that a plaintiff make demand if a defendant legitimately acquired possession of the property under a good faith claim of right. The Trustee argues that even if Kovacs wrongfully obtained the funds, such wrongfulness cannot be imputed to him as trustee, therefore, he obtained the funds in good faith. Moreover, he argues that in his capacity as

10

trustee of the Debtor, he had a legitimate right to the funds and that it was up to the

alleged true owner to make demand.

Plaintiff Republic Bank states in its memorandum in support of its motion for

summary judgment that it is undisputed that the funds in question were Republic's

property, but this is hardly so.  The facts show that Republic purchased the lease from

Tetra prior to Tetra's transaction with Haverhill.  Therefore, the purchase price was

Tetra's property at the time of the transaction and Republic fails to satisfy the second

element of conversion, that it had a right to the property at the time of the alleged

conversion.  Assuming *arguendo* that Republic owned the funds, its claim for conversion

would still fail for the reasons discussed below with respect to Tetra's conversion claim.

The Plaintiff asserts that a good faith reasonable belief that the defendant had a

legal right to the goods is no defense to conversion.  *See Kelly v. LaForce*, 288 F.3d 1, 12

(1st Cir. 2002).  The Plaintiff is correct that a reasonable *belief* that a defendant has a

legal right to the goods is no defense, but where a defendant's possession is not wrongful

in its inception, **demand and refusal** are prerequisites to an action for conversion.  *In re*

*Halmar Distributors, Inc.*, 968 F.2d 121, 129 (1st Cir. 1992).  In the instant case, while

Tetra, Republic's agent, may have been misled by Kovacs as to the nature of the bargain

it was entering, Tetra intentionally and willingly transferred the $650,000 into the

Debtor's account.  It appears from the record that Kovacs was acting on a frolic of his

own, making it unlikely that Haverhill would be held liable to Tetra for his actions under

the doctrine of *respondeat superior*.  It defies reason, therefore, that whatever

wrongfulness that might be attributable to Kovacs in obtaining the money, twice removed

from the Trustee, can be imputed to the Trustee for the purposes of the Plaintiff's

conversion claim.  Instead, the Trustee legitimately acquired the funds voluntarily

deposited by Tetra in the Debtor's account as result of his statutory powers as trustee.

The Trustee alleges that neither Tetra nor Republic made demand upon the Trustee for

return of the funds and the record is devoid of evidence of such demand having been

made.  The Plaintiffs have failed to establish or even plead this element of conversion.

As a result, the Defendant's motion for summary judgment on Counts III and VI is

granted and Plaintiff Republic Bank's motion for summary judgment is denied.

**Conclusion:**

The Defendant's motion for summary judgment on Counts II and V of the

Plaintiffs' Amended Complaint is hereby GRANTED.

The Defendant's motion for summary judgment on Count I of the Plaintiffs'

Amended Complaint is hereby GRANTED.

The Defendant's motion for summary judgment on Count IV of the Plaintiffs'

Amended Complaint is hereby DENIED.

The Defendant's motion for summary judgment on Counts III and VI of

Plaintiffs' Amended Complaint is hereby GRANTED.

Plaintiff Republic Bank's motion for summary judgment on Count III of its

Amended Complaint is hereby DENIED.

The only count remaining to be tried is Count IV, Tetra's claim for negligence.

The parties are ORDERED to file their Joint Pre-Trial Statement with respect to Count

IV of Plaintiffs' Amended Complaint within 30 days as required by the Court's Pre-Trial

Order (Docket #12).

A separate Order shall issue.


Dated: August 26, 2008                    By the Court,

*Joel B. Rosenthal*

_____
Joel B. Rosenthal
United States Bankruptcy Judge